## Kennedy, Inc., Appellant, *v.* Bannett, Inc.

Argued October 6, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Joseph A. Keough,* and with him *Levi and Mandel,* for appellant.

*Wm. C. Schwebel,* for appellee.

OPINION BY CUNNINGHAM, J., December 16, 1932:

The defendant corporation was the general contractor for the erection of a library building at State Teachers' College, Shippensburg, Pa., and the plaintiff corporation was a sub-contractor for the furnishing and installing of "mastic tile floors" in certain rooms thereof.

On February 6, 1931, the parties entered into a contract in the form of a written proposal by plaintiff and an acceptance thereof by defendant, made and accepted upon a printed form, prepared by plaintiff and having appropriate blanks filled up in typewriting; defendant's acceptance was "subject to the conditions on the reverse side." Plaintiff's general proposal was "to furnish and install flooring" in specified rooms, consisting of squares of "Kennedy mastic tiles," of designated sizes and laid on concrete sub-floors, for the lump sum of $1,100. Among the conditions on the back of the proposal was one reading: "Title to all materials furnished by us [plaintiff] shall remain vested in us until you [defendant] have made to us all payments in full." Another specified that defendant should provide plaintiff with a convenient and safe room on the premises for its exclusive use in storing its materials. Defendant was to give plaintiff twenty days' written notice to ship the materials and ten days' notice to send its employes to make the installation.

The provision which gave rise to the controversy in this case is a part of condition No. 7 and relates to the time and manner of payment to plaintiff. It reads: "Upon our application or request therefor, payments

shall be made to us in New York exchange to the amount of 80% of the contract value of the material and/or labor furnished; balance upon completion." Claiming that defendant had breached this provision, plaintiff, on September 10, 1931, sued in assumpsit for $760 plus an attorney's fee of $200.

No material issues of fact developed at the trial and the question involved, both below and here, relates to the proper construction of the contract under the following facts:

The tiles were not taken out of stock but were specially manufactured for the building. About June 27, 1931, defendant gave written notice to plaintiff to ship the materials; thereupon plaintiff shipped to itself at Shippensburg, in care of a truckman, certain boxes containing 7,322 square feet of tiles and 58 gallons of mastic cement; these materials arrived at Shippensburg on July 8th.

While they were in transit, plaintiff wrote defendant, under date of July 6th, this letter: "We enclose herewith application for payment on account of material delivered under our contract for the installation of flooring in the above building. Shipment of this material was made on the date of the application. In accordance with condition 7 of our contract, payment of the sum named in the application, $760, will be due upon arrival of our material at the building and we request, therefore, that you kindly send your check as soon as material arrives in order to facilitate the sending of our men to start the installation of the floors."

Defendant took the position that plaintiff was not entitled, under the terms of the contract, to any payment on account until the work of installing the floors had at least been commenced, and therefore declined to make the payment demanded. On August 25th plaintiff wrote defendant that unless it received the payment in question by August 29th it would remove

its "materials from the job and start suit" and cautioned defendant against using the materials "until satisfactory payments have been made." Defendant still declined to make the payment and plaintiff refused to send its employes to install any part of the flooring; the materials were ultimately removed from the premises by plaintiff under orders from the representative of the Commonwealth.

The amount sued for on account of materials—$760 —is 80% of $950, which latter amount plaintiff claims was the "contract value" of the tiles and cement shipped; it was arrived at by charging for 7,322 square feet of tiles at .116 cents per square foot and 58 gallons of cement at 48 cents per gallon, and adding to these amounts $62.70 for freight, $1.60 for express, and $13.46 for hauling, charges. A condition on the back of the contract provided that if defendant should default in payment it would reimburse plaintiff for "any reasonable legal expense and/or attorney's fees" incurred by plaintiff in making collection, etc. Evidence was introduced at the trial that $200 would be a reasonable fee for the services rendered by plaintiff's attorney.

At the conclusion of the testimony, the trial judge, Gordon, Jr., J., refused defendant's point for binding instructions and directed a verdict in favor of plaintiff for $760, with interest, plus $200 for legal expenses, or a total of $994.20. Defendant moved for a new trial and for judgment in its favor n. o. v. Upon argument of these motions before the court below, in banc, a new trial was refused but the colleagues of the trial judge reached the conclusion that "binding instructions should have been given for the defendant instead of for the plaintiff" and accordingly granted defendant's motion for judgment n. o. v.; from this action of the court below the trial judge dissented, and we now have this appeal by the plaintiff from the judgment so entered.

In the opinion written for the majority of the court below by STERN, P. J., the broad ground for the conclusion is thus stated: "To us this [the provision relative to payment] seems clearly to mean that at any time the plaintiff could ask the defendant to pay to the extent of eighty per cent of the material and labor theretofore furnished, but could not ask for any payment at all until material or labor had been furnished." After stating that plaintiff's undertaking to furnish materials meant something more than "merely the placing of the goods at or about the situs of the job," the opinion continued: "In short, as we view the contract, the plaintiff had no right to demand payment of any part of the contract price until the defendant received, used, or in some way obtained a benefit from labor done or material delivered to the defendant by the plaintiff. As a practical matter we do not think there was any more furnishing of material to the defendant in this case than if the material had still remained in the plaintiff's own factory, or had been placed in a warehouse, or anywhere else, since the defendant was not allowed to gain any access to it until it met the plaintiff's preliminary demand of payment."

A majority of the members of this court are of opinion the judgment appealed from should be affirmed. The language of the contract is plaintiff's. If it had intended its proposal to mean that it could, at its option, call upon defendant to pay 80% of the contract value of any tiles or cement the moment such materials arrived at the building and would be under no obligation to begin the work of installation until such payment had been made, it should have said so in plain language in its offer. But its undertaking here was to install as well as furnish the flooring; its contract covered both labor and materials; and its terms were 80%, when requested, "of the contract

value of the material and labor furnished." We think the proper construction of plaintiff's own language is that, at any time after it began the work of installation, it could call upon defendant to pay 80% of the contract value of the labor as well as of the materials which had entered into the flooring up to the date of the call, i. e., if, for example, one-fourth of the flooring had then been installed, it could demand 80% of one-fourth of $1,100.

Condition No. 7 also contained elaborate provisions authorizing plaintiff to cancel the contract, upon any default by defendant, and retain, as liquidated damages, all moneys received on account. On the other hand, the retention by defendant of 20% of the contract value until completion was evidently intended to indemnify it against any failure by plaintiff to complete the installation in accordance with the specifications.

Upon consideration of the entire contract in the light of the evidence, we are unable to sustain the assignment of error to the entering of judgment in favor of defendant notwithstanding the verdict.

Judgment affirmed.

GAWTHROP, BALDRIGE and PARKER, JJ., dissent.